UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MIKAIL MARTINEZ,<br><br>Plaintiff,<br><br>v.<br><br>ANGLE, KUENZLI, KIM MEYERS, LEANNE IVERUS, KOWALOWSKI, JESSE, RAYLYNN, HERSHENBERGER, DAWGGENDWARF,<br><br>Defendants. | CAUSE NO. 3:26-CV-1399-PPS-JEM |

OPINION AND ORDER

Mikail Martinez, a prisoner without a lawyer, filed a complaint suing nine individuals at the Miami Correctional Facility (MCF) for allegedly delaying and denying his medical care. The complaint seeks compensatory and punitive damages plus injunctive relief in the form of having the "Grievance Spec[ia]list Michael Gapski and Kimberly Grandstaff fired." ECF 2 at 18. He also filed a motion for preliminary injunctive relief asking that he "be seen with results from his blood lab work so the plaintiff can start his medicated assisted treatment and treatment for his thyroid symptoms." ECF 3. Martinez has not, however, filed a motion to proceed in forma pauperis. This is the fourth case Martinez has brought in this District,[1] so he is aware of

[1] *See Martinez v. English*, No. 3:25-cv-00885-TLS-AZ (filed Oct. 24, 2025); *Martinez v. Miami Correctional Facility*, No. 3:26-cv-00277-TLS-JEM (filed Mar. 3, 2026); *Martinez v. Centurion Med. Group LLC*, No. 3:26-cv-01182-TLS-JEM (filed Aug. 6, 2026). He filed both in forma pauperis motions and unsuccessful motions for preliminary injunctive relief in each of those cases.

the filing fee requirements under 28 U.S.C. § 1915(b), which include the calculation of an initial partial filing fee based on the inmate's trust fund ledgers. Without a motion and a ledger, I can't calculate the initial partial filing fee owed, if any, and I don't have the authority to waive the fee. *See Butler v. Deal*, 794 F. App'x. 542, 544 (7th Cir. 2020) (citing *Maus v. Baker*, 729 F.3d 708, 709 (7th Cir. 2013)); *see also Newlin v. Helman*, 123 F.3d 429, 435 (7th Cir. 1997) ("[T]he statutory formula therefore required him to prepay part of the filing fee *before the district court considered the merits of the case in any fashion*.") (emphasis added)).

That said, because Martinez has filed a motion for emergency injunctive relief, I will consider that specific request prior to screening his full complaint. A preliminary injunction is a "very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (quoting *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020)). To obtain a preliminary injunction, a movant "must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Tully v. Okeson*, 977 F.3d 608, 612-13 (7th Cir. 2020) (quoting *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the merits, "the applicant need not show that it definitely will win the case." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its

case." *Id*. at 763 (quotation marks omitted). In assessing the merits, I do not "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the merits must be assessed as "they are likely to be decided after more complete discovery and litigation." *Id.* at 792.

With regard to irreparable harm, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. If the movant meets all the threshold requirements, only then may I "consider the balance of harms between the parties and the effect of granting or denying a preliminary injunction on the public interest." *Tully*, 977 F.3d at 613 (internal quotation marks omitted).

"Mandatory preliminary injunctions" requiring the defendant to take affirmative acts are viewed with particular caution and are "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Additionally, in the prison context, my ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted).

Martinez claims his medical care has been delayed or denied since mid-January of 2026. Specifically, he says he was seen by a psychiatrist via a video visit on January

14, 2026. Martinez explained to him that he was experiencing weight loss, dizziness, and swollen glands in his neck, so the psychiatrist ordered some bloodwork for a potential thyroid issue. He also recommended that Martinez "have labs and a urine analysis taken . . . for his addiction recovery services so the psychiatrist could proceed forward with medicated assisted treatment for the plaintiff's recovery process on several substances the plaintiff was abusing ranging from heroin to methamphetamines." ECF 2 at 3. His emergency motion asks that he be seen by medical staff about the results of his bloodwork so he can "start his medicated assisted treatment and treatment for his thyroid symptoms." ECF 3 at 1.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal quotation marks and

citation omitted). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (quoting *McGowan v. Hulick,* 612 F.3d 636, 640 (7th Cir.2010)).

Based on the record, I can't find Martinez has a reasonable likelihood of success on the merits of an injunctive relief claim. Although there may have been delay, this isn't a case where an inmate is currently being ignored and denied all care. Martinez admits he was seen and assessed by Nurse Practitioner Raylynn on February 18, 2026, and she told him his bloodwork would be drawn later by a different provider assigned to that task. ECF 2 at 3-4. In June 2026, Assistant Medical Director Kim Meyers told him she couldn't personally approve him for medication-assisted treatment and that he needed to see Mr. Kowalowski instead. *Id*. at 4. His blood and urine samples were eventually collected by Nurse Jesse in late June, although Martinez alleges she didn't properly submit them to the lab at that time. *Id*. at 5. Martinez wrote several more grievances, and Mr. Gapski responded on August 20, 2026, by acknowledging the delay and stating that the labs would be rescheduled. The full response states:

> After reviewing your grievance, Ms. D. Brown, Regional Grievance Coordinator, stated, 'Patient is correct and labs were not drawn in February. Site will get him on the schedule for labs and Thyroid test.' I apologize for any delay you might have encountered with medical in the past. They have worked very diligently to ensure that the medical department runs more efficiently for everyone involved. If you have not been scheduled for your labs by 8/27/26, please submit a pink request slip and reference this grievance #26-257519.

ECF 2-1 at 12. Martinez admits the labs were re-drawn on August 31, 2026, and that he was seen by a psychiatrist on September 17, 2026. ECF 2 at 5-6. Although he claims he still hasn't received the results or further care, less than a month had elapsed between the date his samples were collected and the date he filed his complaint on September 20, 2026. And once the missed labs were brought to the grievance office's attention, officials rescheduled him and drew his blood, and he has since seen a psychiatrist. He says his requests to be seen since August 31 haven't been answered (ECF 2 at 5, 8), but a few weeks' wait for test results to be reviewed doesn't suggest that anyone currently knows of and is disregarding an excessive risk to his health. Based on this record, I can't conclude that Martinez is currently being denied constitutionally adequate medical care. *See, e.g.*, *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (inmates aren't "entitled to demand specific care"); *Jackson v. Kotter*, 541 F.3d 688, 697–98 (7th Cir. 2008) ("[M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards."); *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("[T]he Eighth Amendment does not require that prisoners receive

unqualified access to health care.") (internal quotation marks omitted); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (nor are they entitled to "the best care possible").

Moreover, the details about his health issues are sparse. Regarding his physical symptoms, the complaint says that he experienced weight loss, dizziness, swollen glands, and blurred vision. *See* ECF 2 at 3, 9-13. He doesn't describe those symptoms further or explain whether they have stayed consistent or gotten worse over time. Nor does he explain how the current wait is "exacerbat[ing] the injury of unnecessarily prolong[ing]" his pain. *Arnett*, 658 F.3d at 753. Similarly, he says he needs medication-assisted treatment because of his history of drug use, but he doesn't elaborate on that issue. By Martinez's own account, the psychiatrist wanted lab work done before starting that treatment, and that lab work has now been done. Meyers' statement that she couldn't approve the treatment and that Martinez needed to see Kowalowski reflects a referral to the provider who is responsible for that decision. It is not a refusal to treat. His preference to begin treatment immediately is, at most, a disagreement with his providers about the proper course of treatment, which isn't enough. *See Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) ("[M]ere disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation.") (citation and internal quotation marks omitted)).

Because the current record doesn't demonstrate Martinez has a reasonable likelihood of success on the merits of a permanent injunctive relief claim, granting a preliminary injunction isn't warranted. *See Ill. Republican Party*, 973 F.3d at 762 ("mere

possibility of success is not enough"); *Univ. of S. Ind.*, 43 F.4th at 791–92 (explaining that a court need not analyze remaining elements because this step is "often decisive").

Accordingly, the motion for preliminary injunction (ECF 3) is **DENIED**.

SO ORDERED.

ENTERED: October 8, 2026.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT